UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUSTIN HARTON CHASE,<br>Petitioner,<br>v.<br>B. BIRKHOLZ, Warden,<br>Respondent. | Case No. CV 26-03410-DMG-KES<br><br>ORDER ACCEPTING REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Petition (Dkt. 1), the other records on file herein, and the Report and Recommendation of the United States Magistrate Judge. Report [Doc. # 20]. Further, the Court has engaged in a de novo review of those portions of the Report and Recommendation to which objections have been made. *See* Obj. [Doc. # 22].

The Report recommends the grant of the Petition and an order that the Bureau of Prisons ("BOP") recalculate Petitioner's earned time credits under the First Step Act ("FSA"). Respondent's objections to the Report do not merit a different result.

Respondent objects that the Report "resolves a claim the Petition does not

raise." Obj. at 4–5. The claim the Petition does not raise, according to Respondent, is the alleged entitlement to credits between July 18, 2023, to February 28, 2025. *Id*. at 4. Instead, Respondent argues, Petitioner claimed an entitlement to credits only for the 123-day period between October 27, 2024, to February 27, 2025. *Id*. Thus, the period that Respondent describes as unclaimed by Petitioner is the period from July 18, 2023, to October 26, 2024, as well as the single day of February 28, 2025. *Id*.

The Court disagrees. In Claim One of the Petition, Petitioner claimed an "unlawful failure to apply First Step Act Earned Time Credits," which was not limited to the 123-day period. [Doc. # 1 at 3–4.] Petitioner also clarified that his FSA claim covered not only the 123-day period that Respondent concedes, but also his "'Months in line' credits despite continuous eligibility," and Petitioner asserted that credits "accrue from the date of sentencing[.]" *Id.* at 3. Given these allegations, the Report properly construed Claim One as alleging an entitlement to FSA credits "from July 18, 2023, the date [Petitioner] was sentenced, to February 28, 2025, the date he arrived at his designated facility, FCI Lompoc I, in Lompoc, California." Report at 2.

Respondent objects that "the futility finding does not address the governing standard and cannot be reconciled with the [Report's] merits holding." Obj. at 5–7. The Report found that exhaustion of Petitioner's claims would be futile because his claims would be denied pursuant to a BOP policy, which maintains that an inmate cannot earn FSA credits before arriving at his designated BOP facility. Report at 7. Respondent's objection to this finding includes two arguments. Obj. at 5–7. First, Respondent argues that the "governing standard" for futility depends "on what the agency has actually decided, not on what a litigant predicts it would decide." *Id.* at 5. The Court disagrees. The Report cites a BOP program statement (Statement 5410.01 CN2) and a federal regulation (28 C.F.R. § 523.42(a)) for the proposition that, when Petitioner filed this action, an inmate cannot earn FSA credits before

arriving at his designated BOP facility. Report at 7. The BOP program statement and federal regulation qualify as statements of official BOP policy that would have rendered exhaustion futile. *See Fraley v. U.S. Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993) (*per curiam*) (BOP program statement); *Ward v. Chavez*, 678 F.3d 1042, 1045-46 (9th Cir. 2012) (federal regulation).

Second, Respondent argues that the futility analysis "cannot be reconciled with the [Report's] merits holding" because they are "in tension." Obj. at 6. They are in tension, according to Respondent, because official BOP policy that would render exhaustion futile (because it would necessarily preclude Petitioner's FSA claims) cannot be reconciled with an order from the Court that the BOP determine whether Petitioner's activities qualified for FSA credits. *Id*. The Court does not find tension in the Report's reasoning. The Report's reasoning that official BOP policy is inconsistent with a federal statute as to when an inmate begins to earn FSA credits, 18 U.S.C. § 3585(a), can easily be reconciled with an order from the Court that the BOP determine whether Petitioner's activities qualified for credits under the statute.

Respondent objects that the Report's "reading of the approved programs Guide is contrary to the Guide's own terms, and the Guide independently forecloses earning during the holdover." Obj. at 7–9. In other words, the objection disputes whether the programs completed by Petitioner qualified for FSA credits under the BOP's Approved Program Guide. *Id*. The Court agrees with the Report's analysis, which is that Petitioner's programming does not appear to be categorically excluded from FSA credits under the Guide. "[B]y its own terms, the Guide does not purport to contain an exhaustive list of all activities that may constitute [productive activities]," and the Guide is updated at least once a year. Report at 9 (citing Doc. # 9-5 at 6–7, 12). Productive activities can include "unstructured activities" (such as teams, exercise, and worship services), and the Guide "only lists structured, curriculum-based, PAs." [Doc. # 9-5 at 5–6.] The BOP therefore should be

ordered to determine in the first instance whether Petitioner's activities qualified him to earn credits. Report at 10. These "determinations are for the BOP to make." *Id*. Respondent's objection that the Court should find in the first instance that Petitioner's programming activity does not qualify for FSA credits is unavailing. "Whether [Petitioner] successfully participated in appropriate programming, and how much credit he is entitled to, are issues for the BOP to address when it undertakes its recalculation." *Grushko v. Warden*, 2026 WL 962409, at *3 (M.D. Penn. Apr. 9, 2026) (citation and footnote omitted); *see also Llufrio v. Johns*, 2020 WL 5248556, at *2 (S.D. Ga. Aug. 13, 2020) ("[I]t will be for the BOP first to determine whether to award [Petitioner] time credit, not this Court.").

Respondent objects that the Report's "invalidation of 28 C.F.R. § 523.42(a) resolves a question this case does not present, and the provision has since been withdrawn." Obj. at 9–11. When the Report was issued, 28 C.F.R. § 523.42(a) provided that inmates are eligible to earn FSA credits only after an inmate "arrives or voluntarily surrenders at the designated [BOP] facility where the sentence will be served." Report at 8. Respondent's objection involving this regulation includes two arguments. Obj. at 9–11. First, Respondent argues that this case "does not present" whether Petitioner is entitled to credits for any time beyond the 123-day period between October 27, 2024, to February 27, 2025. *Id*. As explained previously above, the Court agrees with the Report's reading of the Petition to claim an entitlement to FSA credits "from July 18, 2023, the date [Petitioner] was sentenced, to February 28, 2025, the date he arrived at his designated facility, FCI Lompoc I, in Lompoc, California." Report at 2.

Second, Respondent argues that 28 C.F.R. § 523.42(a) was withdrawn after the Report was issued. Obj. at 10–11. Thus, effective September 30, 2026, an "eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences." 28 C.F.R. § 523.42(a) (eff. Sept. 30, 2026). This change "allows inmates awaiting transportation to their designated facilities to

begin FSA-approved programming, the successful completion of which may earn eligible inmates Time Credits." 91 Fed. Reg. 55740-01, 55741, 2026 WL 2554449 (Aug. 31, 2026). This change in the regulation is entirely consistent with Petitioner's claims and with the Report's analysis that an inmate may begin earning credits when his sentence commences. Report at 8. It therefore is not apparent to the Court why Respondent continues to object to the grant of habeas relief in this action. Regardless of which version of the regulation is applicable, Petitioner would be entitled to the recalculation of his credits under either version.[1]

Respondent objects that "the recommended relief exceeds the claim, the record, and the statute." Obj. at 11–12. The objection includes four arguments. *Id.* First, Respondent argues again that the number of credit days being challenged in this action consists only of the 123 days between October 27, 2024, to February 27, 2025. Obj. at 11. As previously explained above, the Court agrees with the Report's reading of the Petition to claim an entitlement to FSA credits "from July 18, 2023, the date [Petitioner] was sentenced, to February 28, 2025, the date he arrived at his designated facility, FCI Lompoc I, in Lompoc, California." Report at 2.

Second, Respondent argues that the Report recommended relief that no party advanced and that relies on out-of-circuit authority. Obj. at 11–12. The recommended relief is that the BOP will "determine whether Petitioner participated in any other relevant programming or activities or whether he sought to participate in such programming but was prevented from doing so while in the United States Marshal Service's custody between July 18, 2023, and December 5, 2023, while in

[1] Although this recent change in the BOP's regulation suggests that it would no longer be futile for Petitioner to exhaust his claims, futility is measured from the time the action is filed. *See Brown v. Maass*, 11 F.3d 914, 915 (9th Cir. 1993) (*per curiam*) ("The appropriate time to assess whether a prisoner has exhausted his . . . remedies is when the federal habeas petition is filed[.]"). Thus, the Court continues to agree with the Report that exhaustion would have been futile at the time that Petitioner filed this action.

holdover status at FCI Phoenix between October 27, 2024, and November 4, 2024, or at any in-transit facility." Report at 11 n.2. As support, the Report cited *Miles v. Bowers*, 173 F.4th 372, 376 (1st Cir. 2026), which noted the BOP's "fluid approach to awarding FSA time credits," which "allows prisoners to earn time credits, even without participation in [evidence-based recidivism reduction] programs, when the prisoners are 'able and willing' to complete programming post-assessment but suitable programming is unavailable." *Id*. The Court finds that the recommended relief is proper. Because the Court agrees with the Report that Petitioner is claiming an entitlement to credits from July 18, 2023, to February 28, 2025, the Court also agrees with the Report that the BOP should determine whether Petitioner sought to participate in programming during periods that fall within those dates but was prevented from doing so. Moreover, although *Miles* is not binding on District Courts in the Ninth Circuit, it is persuasive authority that led the BOP to change 28 C.F.R. § 523.42(a) in establishing when FSA credits can begin to accrue. *See* 91 Fed. Reg. 55740-01, 55741, 2026 WL 2554449 (Aug. 31, 2026) (citing "recent court decisions" including *Miles* as a reason to change the regulation).

Third, Respondent again argues Petitioner is not entitled to the credits to which he claims. Obj. at 12. As previously explained above, whether Petitioner successfully participated in appropriate programming, and how much credit he is entitled to, are issues that the BOP should resolve in the first instance.

Fourth, Respondent argues that the requirement of a 30-day status report after recalculation of the credits is improper because recalculation is improper. Obj. at 12. Because Petitioner is entitled to recalculation of his credits, as explained by the Report and as subsequently validated by the change in the applicable federal regulation, the requirement of a 30-day status report also is proper.

The Court notes that it received a "Motion in Response to Objections" from Chase on October 13, 2026. [Doc. # 24.] Petitioner asserts that the Court has not received his attempts to change his address. The Court has updated the address for

Petitioner to the Forrest City, Arizona address he provides in his Motion in Response to Objections. The Court has otherwise addressed Petitioner's arguments and finds that his Petition has merit, as set forth in this Order.

The Court accepts the report, findings, and recommendations of the Magistrate Judge.

IT IS THEREFORE ORDERED that:

1. Judgment be entered granting the Petition.

2. The Federal Bureau of Prisons ("BOP") shall recalculate Petitioner's First Step Act ("FSA") Earned Time Credits ("ETCs") as follows:

   a. Identify all relevant programming and activities in which Petitioner participated between **July 18, 2023, and February 28, 2025**;[2]

   b. Determine which of those programs and activities were consistent with Petitioner's identified needs and otherwise satisfy the requirements for evidence-based recidivism reduction ("EBRR") programs or productive activities ("PAs") under 18 U.S.C. § 3632(d)(4)(A) and the applicable provisions of the FSA;

---

[2] The record identifies the five programs that Petitioner completed while in holdover status at FCI Victorville. Nevertheless, the BOP should also determine whether Petitioner participated in any other relevant programming or activities or whether he sought to participate in such programming but was prevented from doing so while in the United States Marshals Service's custody between July 18, 2023, and December 5, 2023, while in holdover status at FCI Phoenix between October 27, 2024, and November 4, 2024, or at any in-transit facility. See Miles v. Bowers, 173 F.4th 372, 376 (1st Cir. 2026) (noting "BOP's fluid approach to awarding FSA time credits" and explaining that BOP "allows prisoners to earn time credits, even without participation in EBRR programs, when [they] are 'able and willing' to complete programming post-assessment but suitable programming is unavailable").

c. Award Petitioner any FSA ETCs to which he is entitled based on the qualifying programs and activities identified under paragraph 2(b), consistent with 18 U.S.C. § 3632(d)(4)(A). The BOP shall clearly identify the exact number of ETCs credited toward Petitioner's sentence as part of the recalculation;

d. Clearly identify any programs or activities identified under paragraph 2(a) between **July 18, 2023, and February 28, 2025**, that are not being credited toward Petitioner's sentence under the FSA and provide a detailed explanation for each such determination; and

e. Complete the recalculation and file a status report within 30 days of this Order. The status report shall address each of the foregoing requirements and provide a detailed explanation of BOP's final calculation.

As a federal prisoner proceeding under 28 U.S.C. § 2241, Petitioner is *not* required to obtain a certificate of appealability ("COA") in order to appeal to the United States Court of Appeals in this case. *See Harrison v. Ollison*, 519 F.3d 952, 958 (9th Cir. 2008) (holding that the plain language of 28 U.S.C. § 2253(c)(1) does not require federal prisoners bringing § 2241 petitions to obtain a COA in order to appeal, unless the § 2241 petition "is merely a 'disguised' § 2255 petition"); *see e.g., Tomlinson v. Caraway*, No. 14-cv-020094-VBF-KK, 2014 U.S. Dist. LEXIS 131448 at *2, 2014 WL 4656432 at *1 (C.D. Cal. Sept. 16, 2014) (adopting report and recommendation and noting that petitioner in federal custody was not required to obtain a COA to appeal the denial of his § 2241 petition).

DATED: October 21, 2026

Dolly M. Gee

DOLLY M. GEE
CHIEF U.S. DISTRICT JUDGE